UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
CYRESS SMITH,

                    Plaintiff,          Case No.

       -against-              **COMPLAINT & JURY DEMAND**

THE CITY OF NEW YORK, INSPECTOR
JOHN COSGROVE,
                    Defendants.
------------------------------------------------------X

Plaintiff Cyress Smith (hereinafter "Plaintiff,") as and for his complaint by his undersigned counsel, alleges as follows:

## INTRODUCTION

1. This is a suit to obtain relief for discrimination on the basis of Plaintiff's race, and discrimination on the basis of disability, as well as retaliation arising from the racial discrimination which continues through his employment by the City of New York, (hereinafter "the City" through its agency, the New York City Police Department (hereinafter " the NYPD").

## VENUE

2. The basis of venue is Plaintiff's employment in New York County and New York County being the venue where the events alleged in the complaint occurred. Venue is proper in the United District Court for the Southern District of New York pursuant to 28 U.S.C. §§1391(b) and (c) and 42 U.S.C. 2000e-5(f)(3) in that the offices of defendants are within this district, a substantial part of the events giving rise to this claim arose in this district and records relevant to the practices complained of herein are located in this district.

1

## JURISDICTIONAL PREREQUISTE

3. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and a right to sue letter was received by the plaintiff on December 30, 2016.

4. This complaint is filed within 90 days of December 30, 2016.

## PARTIES

5. Plaintiff Cyress Smith is currently employed as a Sergeant in the NYPD currently posted to the 42nd Precinct of NYPD, located in the Bronx, New York, since September 22, 2016, but for the 10 years preceding that date, he had been posted to the Performance Monitoring Unit, Risk Mitigation Bureau, located in Manhattan, County, City and State, of New York.

6. At all times relevant Plaintiff, as an employee of the NYPD, a department of the City, is by virtue of that fact, an "employee" of the CITY within the meaning of the relevant statutes.

7. Upon information and belief, the CITY is a domestic government agency and is engaged in business in the state of New York, with a place of business in New York County.

8. At all times relevant to this action, CITY was an "employer" for purposes of the common law of New York and the relevant statutes.

## FACTUAL ALLEGATIONS

9. Since May 2015, until today, Cyress Smith has been subjected to racial discrimination, and racial discrimination by virtue of a hostile work environment, and has been subjected to continuous and continuing acts of retaliation because of his race, and has been discriminated against because of his disability.

10. Plaintiff has been a police officer in the NYPD for 19 years and has been in the rank of Sergeant for 12 years. For the last 10 years, he has been a key personnel in the NYPD's Performance Monitoring Unit, and until he was transferred on September 22, 2016, was the longest serving member of the Performance Monitoring Unit. Since May 2015, Sergeant Smith has been subjected to discrimination on the basis of race, a hostile working environment, retaliation after he complained of discrimination on the basis of race, and discrimination on the basis of disability.

11. Plaintiff is a high performing member of the NYPD. Prior to November 2015, he was a prime instructor involved in the training of cadres of the NYPD from police officers to captains, on the process and procedure of performance monitoring and evaluation of officers. Plaintiff was solely responsible for introducing an effective filing system in the performance monitoring unit, created the employee management division insignia; created an instructional power point presentation used to train officers on the tenets of the performance monitoring program; and modified the performance monitoring profile form to reflect the newly created civil law suit program. In recognition of Sergeant Smith's accomplishments, in March 2015, the Baltimore Police Department officially contacted the NYPD with a formal request to speak to Sergeant Smith and pick his brains regarding the Baltimore Police Department's misconduct monitoring program. For a period of time in 2015, Sergeant Smith was responsible for administering the police departments evaluation system for the uniformed members of the service.

12. In the years 2013, 2014 and 2015, Sergeant Smith has received performance evaluations of 4.0 (highly competent) or 3.5. Although 4.0 is a relatively high rating, considering Sergeant Smith's consistently high performance, this is a racially unfair rating because

comparably situated white co-employees in the rank of Sergeant who performed as well or worse than Sergeant Smith, all routinely received evaluation ratings of of 4.5 (above highly competent), while Sergeant Smith, who is the most senior member of the unit in terms of longevity, and arguably the highest performer, is given a 4.0 annual performance evaluation rating.

13. The reason behind the 4.0 rating is that according to NYPD employment practice and procedure, while a 4.0 rating is a minimum requirement for career advancing promotions or transfers, a 4.5 rating is actually required for highly desirable employment opportunities such as promotions or transfers to elite or strategic units. In order to be promoted or transferred to a more desirable and better paying position, Sergeant Smith requires at least an annual performance evaluation rating of 4.5, and by denying him this rating, Sergeant Smith's white supervisors are making sure that Sergeant Smith can not advance in his career within the NYPD. A rating of 4.0 puts Sergeant Smith at a disadvantage to his white co-employees in terms of promotions and transfers to elite assignments. Comparable white co-employees who performed worse or similar to Sergeant Smith over the same ratings period and received evaluation scores of 4.5 are Sergeant Piper (a white male), Sergeant Dirilik (a white female), and Lieutenant (formerly Sergeant) David Wittman (a white male). The plaintiff's relatively low performance evaluations are racially motivated. If Sergeant Smith is white, instead of African-American, he would have received a 4.5 annual performance evaluation score along with the white Sergeants. The supervisors who are discriminating and have discriminated against Sergeant Smith due to his race, are Captain Richard Gubitosi (white male); Captain James Dennedy (white male); Inspector John Cosgrove (white male);

4

Lieutenant Alexander (white male); and Lieutenant David Wittman (white male).

14. On or about June 9, 2014, and on or about November 25, 2015, Sergeant Smith officially appealed his evaluations for the 2013 and 2014-2015 ratings period. Each time, his appeal has been handled in a dismissive and unprofessional manner by his direct supervisors and they have sought to further punish him for not accepting their evaluation of him.

15. For the 2013 rating period, Lieutenant David Wittman gave Sergeant Smith a rating of 4.0 and Sergeant Smith appealed. On appeal, Deputy Chief William J. Matusiak who heard the appeal, agreed with Sergeant Smith that the evaluation "was based upon other than performance factors". Deputy Chief Matusiak also found that five other Sergeants within the Performance Monitoring Unit were rated 4.5, (above highly competent), and finally, Deputy Chief Matusiak ruled that Sergeant Smith's rating should be changed from 4.0 to 4.5.

16. After Sergeant Smith's successful appeal of the 2013 rating in October 2014, his white supervisors have purposefully and unduly delayed his appeals of the 2014 and 2015 evaluations, by delaying any reviews and adjudications relating to Sergeant Smith's rating, and simply by not informing Sergeant Smith as to their determinations at the appropriate time. According to Departmental procedure, an officer who is being evaluated is entitled to be informed as to the evaluation and is provided an opportunity to discuss the evaluation at the time it is made, by the person's evaluator. In the case of the plaintiff, due to racial bias and prejudice, his 2015 annual evaluation, which was prepared by Lt. David Wittman, after Lt. Wittman had already left the Performance Monitoring Unit, was prepared without plaintiff's knowledge, and therefore he was improperly

denied the ability to appeal the evaluation in a timely manner.

17. Since May 2015, plaintiff's commanding officer, Inspector John Cosgrove, has treated the plaintiff with unprovoked disdain and has tried to demean, and humiliate the plaintiff within the sight and hearing of co-workers. Inspector Cosgrove told plaintiff that plaintiff should transfer to another command because, he, Cosgrove, was not going to take it easy on the plaintiff, for previous discourtesies alleged to have been shown by the plaintiff to Lt. Wittman, although the alleged discourtesies occurred before Inspector Cosgrove was assigned to the command. This was an unprovoked threat motivated only by racial animus.

18. On another occasion, Inspector Cosgrove informed the plaintiff that he, Cosgrove, had reviewed plaintiff's Central Personnel Index (CPI) and that he had found an issue he was looking into. Such statements by the commander of the unit are unusual and was motivated by racial bias. By treating the plaintiff with such undisguised contempt, Inspector Cosgrove encouraged other members of the Performance Monitoring Unit, including Captain Dennedy and Lt. Alexander, to develop equal disdain for the plaintiff.

19. Inspector Cosgrove also humiliated the plaintiff by directing him to perform duties normally assigned to those of lesser ranks, such as police officers or cadets, such as delivering mail. From about August 2015 to approximately October 2015, Inspector Cosgrove, via Lt. Bailey and Captain Dennedy, ordered plaintiff to do the daily mail deliveries from the command location to One Police Plaza. Within that period, while plaintiff was on his way to deliver the mail, he encountered Inspector Cosgrove who taunted him, saying "you don't mind doing the mail run now, but wait until it gets cold". Plaintiff was forced to deliver the mail on a daily basis for a period of approximately two

months.

20. Inspector Cosgrove also demeaned the plaintiff by assigning him to watch cameras on February 1, 2016, even though he was well aware that plaintiff suffers from severe obstructive sleep apnea.

21. In November 2015, Inspector Cosgrove stripped the plaintiff of his key training assignments and responsibilities with no explanation given, and then Inspector Cosgrove told the plaintiff that his rating annual performance evalution rating for the year 2015 was 3.5.

22. Inspector Cosgrove's public humiliation of the plaintiff in front of his peers and surbodinates created a hostile environment for plaintiff such that members of the unit with whom plaintiff used to enjoy a cordial working relationship now treat him with open hostility. Prior to Inspector Cosgrove's assignment to the Performance Monitoring Unit, plaintiff had a cordial working relationship with Sergeant Nunez, however, since November 2015, when Inspector Cosgrove stripped plaintiff of this trainer/instructor responsibilities and assigned those functions to Sergeant Nunez, Nunez has become openly hostile to the plaintiff. For instance, when the plaintiff routinely inquired about the status of a case that was transferred from the plaintiff to Sergeant Nunez, Nunez threw the case folder contemptuously across the room in the direction of the plaintiff, and then wrote on the Unit communication board, the words "Sgt Smith says, do your job". Sergeant Smith reported this harassment to the Integrity Control Officer (ICO) Lt. James Alexander, but no action was taken.

23. For the 2015 annual rating period, Sergeant Smith received a very unfair performance evaluation rating of 3.5. This evaluation was improperly prepared, according to Inspector

Cosgrove's directive, by Lt. James Alexander, the ICO, who is assigned to a different unit from the plaintiff and who did not even supervise the plaintiff. The person who actually supervised the plaintiff for this period, Lt. Kamala Bailey, was allowed to transfer to a different unit after she refused to go along with Inspector Cosgrove's directive to give the plaintiff an unfair low 3.5 rating. Inspector Cosgrove's improper conduct in usurping the role of the actual supervising officer, and having a non-supervising officer conduct the evaluation, was motivated by racial prejudice.

24. On or about March 14, 2016, plaintiff made a formal complaint against Inspector Cosgrove, to the NYPD's Office of Equal Employment Opportunity, (OEEO) for racial discrimination based on Inspector Cosgrove giving the plaintiff a rating of 3.5 for the 2015 rating period. Inspector Cosgrove has since then retaliated by wrongfully denying plaintiff's reasonable line of duty designation applications on two separate occasions and charging the plaintiff with a bogus and unfair command discipline.

25. In retaliation for his OEEO complaint, Inspector Cosgrove charged the plaintiff with a bogus command discipline (CD). A command discipline is a disciplinary charge for misconduct relating to your employment within the NYPD, and if accepted by the charged employee or sustained in a departmental hearing, will subject the person charged to various punitive actions including withdrawal of earned vacation time, demotions, punitive transfers to less desirable units, placement on the probationary performance program, and termination, depending on the severity of the charge.

26. Inspector Cosgrove charged the plaintiff with a CD on or about April 15, 2016, for a purported tour change that occurred on January 11, 2016. Plaintiff was diagnosed with severe obstructive sleep apnea by the Mount Sinai Hospital World Trade Center

       Monitoring Program. Plaintiff was given the date of January 11, 2016, as the only date available for a medical consultation regarding the treatment of his well documented illness. As is the practice of members assigned to the unit in requesting a tour change, plaintiff made an ink change on the proposed schedule leaving him free to attend the medical appointment, and followed up by requesting permission for the tour change from Captain Dennedy. Such requests are routinely granted especially when it is for a medical appointment as in this case. Plaintiff also spoke to Inspector Cosgrove about the requested tour change, and plaintiff's need to arrive on time for the appointment. The tour change requested by the plaintiff was to come in earlier than scheduled and therefore have enough time to make it for the medical appointment. Inspector Cosgrove denied the tour change request and told the plaintiff that he, Cosgrove, had already picked the same date, January 11, 2016, to conduct a hearing on plaintiff's appeal of his 2014 annual performance evaluation, which Inspector Cosgrove had unduly delayed up till then in order to frustrate the plaintiff.

27. Within the Performance Monitoring Unit, it is the practice of members requesting a tour change to make changes on the tour schedule without prior permission from the supervisors. This is done on a daily and routine basis by white members of the unit as can be seen from a review of the daily sign in logs and corresponding schedules. That this privilege was denied to the plaintiff and he was additionally charged with a command discipline is due to the fact that Inspector Cosgrove wants to create a paper trail indicating a bogus pattern of disciplinary misconduct on the part of the plaintiff, in retaliation against the plaintiff for filing a complaint of racial discrimination.

28. Since July 2015, plaintiff's white supervisors have subjected plaintiff to racially

motivated discrimination as well as discrimination on the basis of a disability, by denying his line of duty designation applications for certain medical conditions, without good cause, although they are well aware that plaintiff is entitled to have those conditions designated as having been incurred in the line of duty. Plaintiff was on active duty on September 11, 2001, at the Fresh Kills Landfill in Staten Island, in the months 9-11-01, assigned to search debris and recover personal belongings of victims for identification and recovery purposes. Plaintiff was exposed to hazardous dust and toxins while performing these assigned duties. Shortly after, plaintiff developed and was diagnosed with chronic rhinosinusitis, gastroesophageal reflux disease, asthma, chronic cough; and severe obstructive sleep apnea. Plaintiff developed abnormal discharges of mucus and found it difficult to breathe, especially at night, while sleeping. The Victim Compensation Fund established for victims of the World Trade Center bombings certified that plaintiff's medical conditions are traceable to his World Trade Center post bombing assignment and therefore qualified plaintiff to be a beneficiary of that fund. As a result of the above illness, plaintiff was placed on restricted duty on or about February 2015.

29. On or about March 29, 2016, plaintiff was unable to go to work due to an episode of sleep apnea and gastroesophageal reflux symptoms. Plaintiff telephoned his supervisors to report his sickness and secure sick leave and was instructed to come to work the following day. On the following day, March 30, 2016, plaintiff reported to work and was seen by Police Surgeon (Inspector) John Santucci. Dr. Santucci, without physically examining the plaintiff, merely looked at the plaintiff and disdainfully asked him why he was on restricted duty for so long. In a very disrespectful manner, Dr. Santucci threatened

to discipline the plaintiff and possibly have plaintiff fired if plaintiff reports in sick in the future. Against the advise of plaintiff's treating physician, and with no consideration for plaintiff's well documented illnesses, Dr. Santucci returned plaintiff to full duty with no restrictions.

30. Dr. Santucci's treatment of the plaintiff described above was racially motivated and also retaliatory, because it was part of Inspector Cosgrove's design, using other supervisors such as Inspector Santucci, Captain Dennedy, and Lt. Alexander, to punish the plaintiff for daring to make a complaint of racial discrimination.

31. Dr. Santucci's revocation of plaintiff's restricted duty status also amounted to discrimination against the plaintiff for the disability imposed on him by his 9/11 related diseases. According to applicable departmental rules, procedure, executive orders and or usual practice, if an employee, is on less than full duty status for more than one year, then that employee, should be surveyed off the job, or in other words, declared medically disabled and physically unable to continue in the employment, and will become entitled to disability payments if appropriate. At the time that he was seen by Dr. Santucci, plaintiff had been on restricted duty for over a year and the appropriate thing to do would have been for Dr. Santucci to declare him as medically disabled, however, Dr. Santucci, in collusion with plaintiff's other supervisors, chiefly, Inspector Cosgrove, did not want that outcome because it would most likely result in the plaintiff being entitled, upon his discharge for medical disability, not only to ordinary disability benefits, but also to the additional benefits provided for by the World Trade Center Disability Law. This was done to punish the plaintiff in retaliation for his complaints of racial discrimination, and to deny the plaintiff the enhanced disability benefits that are due to him by right.

32. On or about March 31, 2016, plaintiff went back to work now on full duty and became ill while at work with stomach pain and shortness of breath. Plaintiff requested an ambulance, and was escorted to the nearby Downtown Hospital where he was treated and discharged. The following day, plaintiff telephoned Lt. Alexander and requested an emergency day off due to his ongoing illness. Such requests are routinely granted in those circumstances. In this case, the request was denied.

33. Plaintiff's line of duty applications for these illnesses were wrongfully denied in retaliation for his racial discrimination complaint.

34. The denial of plaintiff's line of duty application for line of duty designations supplied Inspector Cosgrove with a pretextual reason to give the plaintiff a low annual performance evaluation rating of 3.5 for the year 2015. Plaintiff was unfairly rated designated Chronic Sick A, by the medical division because he was not granted the benefit of the line of duty designation.

## AS AND FOR A FIRST CAUSE OF ACTION

35. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

36. The Defendants discriminated against Plaintiff on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) et seq.

## AS AND FOR A SECOND CAUSE OF ACTION

37. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

38. The Defendants discriminated against Plaintiff on the basis of his race in violation of New York State Executive Law (Human Rights Law) §296.

## AS AND FOR A THIRD CAUSE OF ACTION

39. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

40. The Defendants discriminated against Plaintiff on the basis of his race, in violation of Administrative Code of the City of New York.

### AS AND FOR A FOURTH CAUSE OF ACTION

41. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

42. The Defendants retaliated against Plaintiff because he complained about the discriminatory treatment he was subjected to as a result of his race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) et seq.

### AS AND FOR A FIFTH CAUSE OF ACTION

43. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

44. The Defendants retaliated against Plaintiff because he complained about the discriminatory treatment she was subjected to as a result of his national origin, in violation of New York State Executive Law.

### AS AND FOR A SIXTH CAUSE OF ACTION

45. Plaintiff adopts and incorporates each allegation set forth above in support of this count.

46. In light of the foregoing therefore, the Defendants retaliated against Plaintiff because he complained about the discriminatory treatment he was subjected to as a result of his national origin, in violation of the Administrative Code of the City of New York.

### AS AND FOR A SEVENTH CAUSE OF ACTION

47. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

48. The Defendants discriminated against Plaintiff on the basis of his disability, in violation of the Americans With Disabilities Act of 1990.

### AS AND FOR AN EIGHTH CAUSE OF ACTION

49. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

50. The Defendants discriminated against Plaintiff on the basis of his disability, in violation of New York State Executive Law (Human Rights Law) §296.

### AS AND FOR A NINTH CAUSE OF ACTION

51. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

52. The Defendants discriminated against Plaintiff on the basis of his disability, in violation of the Administrative Code of the City of New York.

### PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Plaintiff Cyress Smith demands judgment as follows:

a. Against the Defendants, declaring the acts and practices complained of herein are in violation of the Title VII of the Civil Rights Act of 1964, Human Rights Law of the City of New York and the Laws of the State of New York, and the Americans With Disabilities Act of 1990.

b. Enjoining and permanently restraining these violations of the Human Rights Laws of the City of New York and the Laws of the State of New York;

c. Directing Defendants to pay Plaintiff an additional amount as compensatory damages for his pain and suffering;

d. Directing Defendants to pay Plaintiff an additional amount as punitive damages for their willful and/or reckless disregard for Plaintiff's statutory rights;

e. Awarding Plaintiff such interest as is allowed by law;

f. Awarding Plaintiff reasonable attorney's fees and costs;

g. Trial by Jury; and

h. Granting such and further relief as this Court deems necessary and proper.

Awarding Plaintiff, Cyress Smith, such damages as may be proved at trial, including reinstatement, back pay, front pay, compensatory damages, and punitive damages as well as costs and disbursements of this action.

Dated:   New York, New York          Respectfully submitted,
         February 10, 2017

                                     _____/s/_____
                                     Chukwuemeka Nwokoro (CN-1038)
                                     Nwokoro & Scola, Esquires
                                     Attorney for Plaintiff Cyress Smith
                                     44 Wall Street, Suite 1218
                                     New York, NY 10005
                                     (212) 785-1060
                                     Emekanwokoro101@yahoo.com