UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

CYRESS SMITH,

                               Plaintiff,

                -against-

THE CITY OF NEW YORK and INSPECTOR
JOHN COSGROVE,

                        Defendants.

-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/13/2019

17-CV-970 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiff Cyress Smith sued the City of New York and Inspector John Cosgrove of the

New York City Police Department ("NYPD") for race-based discrimination and retaliation,

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the

New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq.*; and the New

York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* *See* Am.

Compl., Dkt. 20. Plaintiff also sued for disability-based discrimination, pursuant to the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, the NYSHRL, and the NYCHRL,

and for failure to accommodate his disability, pursuant to the ADA. *See id.* Defendants have

moved for summary judgment on all claims, pursuant to Federal Rule of Civil Procedure 56.

*See* Notice of Mot., Dkt. 53. Defendants' motion is GRANTED as to all claims except for a

limited part of Plaintiff's NYCHRL claim for disability-based discrimination. As to that portion

of that claim, summary judgment is DENIED, but the Court declines to exercise supplemental

jurisdiction over it; accordingly, that portion of that claim is DISMISSED WITHOUT

PREJUDICE. This case is CLOSED.

# BACKGROUND[1]

Plaintiff, who is African American, has been a member of the NYPD since 1997. *See* Defs.' 56.1 Stmt. ¶¶ 1–2; Pl.'s 56.1 Resp. ¶¶ 1–2. He has been diagnosed with obstructive sleep apnea and other respiratory problems; those diagnoses are the basis for his alleged disability. *See* Defs.' 56.1 Stmt. ¶¶ 2–3; Pl.'s 56.1 Resp. ¶¶ 2–3. He asserts that his respiratory ailments were caused by his participation in the NYPD's search-and-recovery efforts following the September 11, 2011 attacks. *See* Pl.'s 56.1 Resp. ¶ 3; Nwokoro Decl. Ex. 5.

Between 2006 and 2016, Plaintiff was assigned to NYPD's Performance Monitoring Unit ("PMU"). *See* Pl.'s Mem. of Law at 2; Defs.' 56.1 Stmt. ¶ 5; Pl.'s 56.1 Resp. ¶ 5. Cosgrove served as commanding officer of the PMU between June 2015 and September 2016. *See* Defs.' 56.1 Stmt. ¶¶ 5–6; Pl.'s 56.1 Resp. ¶¶ 5–6. Prior to Cosgrove's arrival, Plaintiff helped train police officers to monitor and evaluate other officers; after Cosgrove became commanding officer, however, Cosgrove relieved Plaintiff of those duties and, instead, assigned Plaintiff to deliver mail and to other tasks. *See* Defs.' 56.1 Stmt. ¶¶ 30–32, 34; Pl.'s 56.1 Resp. ¶¶ 30–32, 34.

---

[1] All facts described herein are undisputed unless otherwise stated. The Court will refer to the parties' submissions as follows: Defendants' Memorandum of Law in support of their motion for summary judgment, Dkt. 56, as "Defs.' Mem. of Law"; the Declaration of John Corbin Carter, Dkt. 55, submitted in support of Defendants' motion, as "Carter Decl."; Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts, Dkt. 54, as "Defs.' 56.1 Stmt."; the Declaration of John Cosgrove, Dkt. 57, submitted in support of Defendants' motion, as "Cosgrove Decl."; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion, Dkt. 66, as "Pl.'s Mem. of Law"; the Declaration of Chukwuemeka Nwokoro, Dkt. 62, submitted in opposition to Defendants' Motion, as "Nwokoro Decl."; the Declaration of Cyress Smith, Dkt. 63, submitted in opposition to Defendants' Motion, as "Pl.'s Decl."; Plaintiff's Statement of Contested Facts Pursuant to Local Civil Rule 56.1, Dkt. 64, as "Pl.'s 56.1 Resp."; the Supplemental Declaration of Chukwuemeka Nwokoro, Dkt. 65, submitted in opposition to Defendants' Motion, as "Nwokoro Supp. Decl."; and Defendants' Reply Mem. of Law in further support of their motion, Dkt. 69, as "Defs.' Reply Mem. of Law." The Court will refer to Plaintiff's deposition, Dkt. 55-2, as "Pl.'s Dep," and to Cosgrove's deposition, Dkt. 55-3, as "Cosgrove Dep."

Until 2015, Plaintiff had consistently received ratings of 4.0 (out of 5.0) on his annual performance evaluations, representing a rating of "highly competent."[2]  *See* Defs.' 56.1 Stmt. ¶¶ 15, 18–19, 21, 23–24; Pl.'s 56.1 Resp. ¶¶ 15, 18–19, 21, 23–24.  Beginning in 2015, however, Plaintiff's conduct deteriorated, causing him to be disciplined on several occasions.  In three instances, Plaintiff received disciplinary warnings, known as command discipline ("CD"), for making unauthorized changes to his shift schedule (known as "tour changes").  *See* Defs.' 56.1 Stmt. ¶¶ 44–51, 56–57; Pl.'s 56.1 Resp. ¶¶ 44–51, 56–57; Cosgrove Decl. Exs. A, B, I. Specifically, Plaintiff was accused of making handwritten changes to posted shift schedules without first obtaining authorization from a supervisor, as NYPD procedures allegedly require.[3] *See* Defs.' 56.1 Stmt. ¶¶ 45, 46, 51, 56; Cosgrove Decl. Exs. A, B, I.

During this time, Plaintiff also received CD for insubordination and disruptiveness. *See* Defs.' 56.1 Stmt. ¶ 57; Pl.'s 56.1 Resp. ¶ 57; Cosgrove Decl. Ex. A at 3–5.  In one instance, Plaintiff shouted at and used profanity with a supervisor when the supervisor questioned Plaintiff's tour changes.  *See* Cosgrove Decl. Ex. B.  In another instance, Plaintiff shouted and waved his arms at two officers because he had not been told that a subordinate had momentarily stepped out of the office.  *See* Cosgrove Decl. Ex. A at 5.  And in two other instances, Plaintiff shouted at and threatened to suspend a fellow officer in front of her co-workers, bringing her to tears.  *See* Cosgrove Decl. Ex. H.

---

[2]    Plaintiff received a rating of 4.5 on his 2013 evaluation, after successfully appealing a rating of 4.0. *See* Defs.' 56.1 Stmt. ¶ 21; Pl.'s 56.1 Resp. ¶ 21.

[3]    Plaintiff argues that NYPD procedures allow officers to obtain supervisor approval *after* making handwritten changes to shift schedules.  *See* Pl.'s 56.1 Resp. ¶ 45 (citing Pl.'s Dep. at 120–29).  Defendants argue that officers were required to obtain supervisor approval *prior* to making such changes.  *See* Defs.' 56.1 Stmt. ¶ 45. As the Court will explain, this dispute is not material.  *See infra* Part II.A.3.

Also during this time, Plaintiff's attendance was poor. Due to an "excessive" number of sick days that Plaintiff took "in comparison to the majority of the [police] force," in late 2014, Plaintiff was designated as a "Chronic Sick: Category A" employee. Carter Decl. Ex. F; *see also* Defs.' 56.1 Stmt. ¶ 68; Pl.'s 56.1 Resp. ¶ 68. According to Plaintiff, his absences were due to the respiratory ailments that he contracted working on post-9/11 search-and-recovery efforts. *See* Pl.'s 56.1 Resp. ¶¶ 68–69. Plaintiff twice applied to have his respiratory ailment classified as a line-of-duty injury ("LODI"); Plaintiff argues that had his ailment been classified as a LODI, his absences "would not have counted against him" in his attendance record.[4] *See* Pl.'s 56.1 Resp. ¶ 68; Carter Decl. Ex. G; Nwokoro Decl. Ex. 8.

Due to Plaintiff's disciplinary and attendance problems, Plaintiff received ratings of 3.5 and 2.0 on his 2015 and 2016 performance evaluations, respectively, a marked drop from the 4.0 ratings he had previously received. *See* Defs.' 56.1 Stmt. ¶¶ 26–27; Pl.'s 56.1 Resp. ¶¶ 26–27; Carter Decl. Ex. D at 35–45. These evaluations stated that Plaintiff had "extremely poor" judgment, as he had "unprofessionally reprimanded subordinate members of the command in public" and had spoken "to subordinates in an unprofessional manner." Carter Decl. Ex. D at 43. The evaluations stated that Plaintiff's behavior had "disrupted command operations." *Id.*

In March 2016, Plaintiff filed a complaint with the NYPD's Office of Equal Employment Opportunity ("EEO"), and, in May 2016, he filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"); both alleged discrimination based on race and disability. *See* Defs.' 56.1 Stmt. ¶¶ 85, 88; Pl.'s 56.1 Resp. ¶¶ 85, 88.

---

[4]     Due to Plaintiff's respiratory condition, he has been on "restricted duty" since 2015. *See* Defs.' 56.1 Stmt. ¶ 67; Pl.'s 56.1 Stmt. ¶ 67. In 2016, Plaintiff was briefly returned to "full duty" for two days, before being designated back to restricted duty. *Id.* The record does not make clear what the difference in working conditions is between the two types of duty, nor does the difference appear to be material.

In September 2016, due to Plaintiff's "repeated disruptive behavior, poor work performance, and persistent refusal to abide by Department guidelines," Cosgrove requested that Plaintiff be transferred to a different unit. Cosgrove Decl. Ex. J at 1. Later that month, Plaintiff was transferred from the PMU to the 42nd Precinct, where he remained assigned for about a year. *See* Defs.' 56.1 Stmt. ¶¶ 59–60, 62; Pl.'s 56.1 Resp. ¶¶ 59–60, 62. At the 42nd Precinct, Plaintiff was assigned to be a "desk officer," a position that required "a high degree of concentration and attention to detail," Am. Compl. ¶ 38, and which was located in an "open and dusty area." *Id.* ¶ 43. Plaintiff asserts that these conditions made it difficult for him to do the job due to his respiratory ailments. *Id.* ¶¶ 39, 44. Plaintiff also asserts that he requested reassignment to a different location in the 42nd Precinct as an accommodation for his disability but that the request was ignored. *See id.* ¶¶ 45, 47.

In October 2017, Plaintiff was transferred to the NYPD's "Queens VIPER" and "Queens Property Clerk" Divisions, where he remained until December 2017. *See* Defs.' 56.1 Stmt. ¶ 63; Pl.'s 56.1 Resp. ¶ 63. Plaintiff was then transferred to the "VIPER 20" unit in Manhattan, where he remains assigned. *See* Defs.' 56.1 Stmt. ¶ 64; Pl.'s 56.1 Resp. ¶ 64.

Plaintiff alleges discrimination and retaliation based on race in violation of Title VII, the NYSHRL, and the NYCHRL. *See* Am. Compl. ¶¶ 48–52, 62–67. Plaintiff also alleges discrimination based on disability, in violation of the ADA, the NYSHRL, and the NYCHRL, *see id.* ¶¶ 68–76, and a failure to accommodate his disability, in violation of the ADA, *see id.* ¶¶ 77–82.[5]

---

[5] Plaintiff brought his failure-to-accommodate claim only under the ADA, not the NYSHRL or the NYCHRL. *See* Am. Compl. ¶¶ 77–82. Additionally, Plaintiff brought claims only for race-based retaliation, not disability-based retaliation. *See id.* ¶¶ 62–67. Plaintiff also originally brought claims for hostile work environment, pursuant to Title VII, the NYSHRL, and the NYCHRL, *see id.* ¶¶ 54–61, but he voluntarily dismissed these claims in response to Defendants' motion to dismiss, *see* Order (Apr. 27, 2018), Dkt. 39; Tr. of Apr. 27, 2018 Conf. at 3; Pl.'s Mem. of Law in Opp. to Defs.' Mot. to Dismiss, Dkt. 27, at 6.

# DISCUSSION

## I.    Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris,* 550 U.S. 372, 380 (2007) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). To defeat summary judgment, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Sista v. CDC IXIS N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). Courts "construe the facts in the light most favorable to the nonmoving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam).

A district court is "under no obligation to engage in an exhaustive search of the record" when considering a motion for summary judgment. *Jones v. Goord*, 435 F. Supp. 2d 221, 259 (S.D.N.Y. 2006) (citing *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470–71 (2d Cir. 2002)); *see also* Fed. R. Civ. P. 56(c)(3); *Lee v. Alfonso*, 112 F. App'x 106, 107 (2d Cir. 2004). A party opposing a motion for summary judgment must "specifically respond to the assertion of each purported undisputed fact . . . and, if controverting any such fact, [must] support its position by citing to admissible evidence in the record." *Baity v. Kralik*, 51 F. Supp. 3d 414, 417–18 (S.D.N.Y. 2014); *see also* Fed. R. Civ. P. 56(c)(1)(A)–(B); *Kalola v. Int'l Bus. Machines Corp.*, No. 13-CIV-7339, 2017 WL 5495410, at *4 (S.D.N.Y. Jan. 9, 2017). A court need not consider arguments that do not comply with these rules. *See Kalola*, 2017 WL 5495410, at *4.

**II.      Defendants' Motion for Summary Judgment Is Granted as to Plaintiff's Claims for Race-Based Discrimination**

      **A.      Plaintiff's Title VII and NYSHRL Claims**

            **1.      The Applicable Law**

Discrimination claims brought pursuant to Title VII and the NYSHRL are analyzed using "the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *see also Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "Under *McDonnell Douglas*, a plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014); *see also Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015).

To establish a prima facie case of discrimination, a plaintiff must show:  (1) that he is a member of a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (citing *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)).

### 2. Plaintiff Has Not Established a Prima Facie Case of Discrimination

#### a. Plaintiff Has Not Shown That He Suffered an Adverse Employment Action

Defendants do not dispute that Plaintiff has satisfied the first two elements of his prima facie case. *See* Defs.' Mem. of Law at 8. As to the third element, an adverse employment action is a "materially adverse change in the terms and conditions of employment." *Weeks v. N.Y. State (Div. of Parole)*, 273 F.3d 76, 85 (2d Cir. 2001). A materially adverse change is a change in working conditions that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. New York City Bd. Of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Examples of materially adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities." *Id.*

Plaintiff asserts that Defendants committed adverse employment actions when they:

- Transferred him out of the PMU to other NYPD units;
- Gave him with poor annual evaluations in 2015 and 2016;
- Issued CDs against him;
- Relieved him of training responsibilities and assigned him to mail duty;
- Failed to classify his respiratory ailment as a LODI;
- Failed to offer him a "discretionary promotion"; and
- Denied him overtime pay.

*See* Pl.'s Mem. of Law at 3–4, 11–12. As a matter of law, none of these actions constitutes an adverse employment action.

#### (i) Transfers

A transfer is an adverse employment action only "if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." *Galabya*, 202 F.3d at 641 (citing *Rodriguez v. Bd. of Educ. of Eastchester Union Free Sch. Dist.*, 620 F.2d 362, 364 (2d Cir. 1980)); *see also Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 206

(2d Cir. 2006). Summary judgment is appropriate when a plaintiff provides no evidence "to show that the transfer was to an assignment that was materially less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement." *Galabya*, 202 F.3d at 641.

Plaintiff's only argument that his transfer to the 42nd Precinct was an adverse employment action is that, at the 42nd Precinct, he was assigned to the position of "desk officer," which was located in a "dusty" area of the Precinct. Pl.'s Mem. of Law at 6; *see also id.* at 11. Plaintiff's assignment to desk duty, however, was made by officers *within* the 42nd Precinct, whom Plaintiff has not alleged discriminated against him. There is no indication that assignment to a "dusty" area was a condition of the initial transfer decision itself; to the contrary, it is undisputed that Cosgrove did not know where Plaintiff would be transferred when he requested that Plaintiff be removed from the PMU.[6] *See* Cosgrove Decl. ¶ 19. Aside from the dustiness associated with this particular job assignment at the 42nd Precinct, Plaintiff offers no evidence that the transfer was an adverse employment action. *See, e.g.*, Pl.'s 56.1 Resp. ¶ 66 (Plaintiff admits that his pay and benefits have not changed due to his transfers). Accordingly, Plaintiff's transfer to the 42nd Precinct does not constitute an adverse employment action.

As to Plaintiff's transfers to the VIPER units, Plaintiff asserts, *ipse dixit*, that "[c]lose to 100% of re-assignments or transfers to the VIPER units are punitive or disciplinary in nature." Pl.'s Mem. of Law at 6 (citing Pl.'s Decl. ¶¶ 9–10); *see also id.* at 11; Pl.'s 56.1 Resp. ¶¶ 58, 61. Plaintiff offers no further details as to why transfer to these units is "punitive" or "disciplinary,"

---

[6] Indeed, Cosgrove stated in his transfer request that he wanted to remove Plaintiff from the PMU because Plaintiff's disciplinary problems created a "conflict of interest" with his work in the PMU, which is responsible for monitoring officers who have been disciplined. *See* Cosgrove Decl. Ex. J ("Sergeant[] Smith's assignment to the [PMU] creates a conflict of interest as Sergeant Smith exhibits the very behaviors and actions that the [PMU] is responsible for monitoring."). This explanation undercuts any notion that the transfer was a demotion or a career setback.

nor does he explain with any specificity how such a transfer had a negative impact on his career advancement. Absent further explanation, Plaintiff's bare assertion is insufficient for a reasonable juror to conclude that the VIPER transfers were adverse employment actions.[7]

### (ii)    Evaluations

Negative performance evaluations qualify as adverse employment actions only if they are "accompanied by negative consequences, such as demotion, diminution of wages, or other tangible loss." *Siddiqi v. N.Y.C. Health & Hosp. Corp.*, 572 F. Supp. 2d 353, 367 (S.D.N.Y. 2008). "[N]egative evaluations, standing alone without any accompanying adverse results, are not cognizable" under the anti-discrimination laws. *Id.*; *see also, e.g.*, *Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 17 (2d Cir. 2011); *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 756 (2d Cir. 2004); *Kaur v. N.Y.C. Health & Hospitals Corp.*, 688 F. Supp. 2d 317, 332 (S.D.N.Y. 2010); *Taylor v. New York City Dep't of Educ.*, No. 11-CV-3582, 2012 WL 5989874, at *7 (E.D.N.Y. Nov. 30, 2012) (collecting cases).

Plaintiff concedes that his negative evaluations did not affect his rate of pay or otherwise result in any immediate, tangible consequences, *see* Defs.' 56.1 Stmt. ¶ 29; Pl.'s 56.1 Resp. ¶ 29; rather, Plaintiff argues that his negative evaluation ratings were adverse actions because they caused him to be placed into the NYPD's "Performance Monitoring Program," *see* Pl.'s Mem. of Law at 4–5, 11. NYPD officers are placed into this Program if they are the subject of negative performance evaluations, civilian complaints, civil-rights lawsuits, or other misconduct. *See* Nwokoro Supp. Decl. Ex. 10. The Program is divided into three tiers of increasing severity. *See*

---

[7]    In any event, there is no evidence that Cosgrove—or any other person about whom Plaintiff has offered evidence raising an inference of discriminatory intent—was responsible for Plaintiff's VIPER transfers; Cosgrove was responsible only for Plaintiff's initial transfer to the 42nd Precinct. Accordingly, even if the VIPER transfers were adverse employment actions, there is no evidence that they had anything to do with Plaintiff's race or disability.

*id.* "Level I" of the Program is the least serious form of monitoring; officers in Level I simply receive a notation in their personnel file and must meet regularly with their commanding officers. *See id.* Because placement in Level I does not carry any tangible negative consequences, it does not constitute an adverse employment action. *See Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001) ("excessive scrutiny" of an employee's performance is not an adverse employment action); *Castro v. N.Y.C. Bd. of Educ. Pers.*, No. 96-CV-6314, 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998) ("[R]eprimands and close monitoring . . . are not materially adverse alterations of employment conditions." (collecting cases)).

"Level II" and "Level III" of the Program entail more serious forms of monitoring; officers in those tiers may be ineligible for overtime, night shifts, and certain anti-crime duties. *See* Nwokoro Supp. Decl. Ex. 10. That level of monitoring might constitute an adverse employment action. But Plaintiff has presented no evidence that even remotely suggests that he was placed into Level II or III of the Program. *See* Pl.'s Mem. of Law at 4–5, 11 (citing Pl.'s Dep. at 104). Accordingly, Plaintiff has not established that his placement in the Program constituted an adverse employment action.[8]

Plaintiff also argues that his negative evaluations made it difficult for him to obtain a "discretionary promotion" within the PMU and that they generally "placed his career in jeopardy," as they rendered him "that much closer to being dismissed." Pl.'s Mem. of Law at 11; *see also id.* at 5. As the Court will explain, Plaintiff offers no evidence that he was eligible for a "discretionary promotion" or even that such promotions existed during the relevant time

---

[8]     Defendants argue that Plaintiff should not be allowed to rely on the document describing the Performance Monitoring Program because he failed to produce the document in discovery. *See* Defs.' Reply Mem. of Law at 2. Because Plaintiff's argument fails as a matter of law, the Court need not resolve this dispute.

period.  *See infra* Part II.A.2.a.vi.  Furthermore, "[i]nformal discipline, criticism, or counseling," while unpleasant and perhaps undesirable from a career standpoint, "does not constitute an adverse act if no change in working conditions accompanies it."  *Rasko v. N.Y.C. Admin. for Children's Servs.*, 734 F. App'x 52, 54–55 (2d Cir. 2018) (citing *Weeks*, 273 F.3d at 86); *see also Browne v. City Univ. of N.Y.*, 419 F. Supp. 2d 315, 332 (E.D.N.Y. 2005) ("[P]laintiff's conclusory assertion that [a negative evaluation] impacted upon his salary and other employment benefits, without more, is insufficient to defeat summary judgment."), *aff'd*, 202 F. App'x 523 (2d Cir. 2006).  Accordingly, Plaintiff's argument fails.

Because Plaintiff offers no other evidence on this point, as a matter of law, his negative evaluations do not constitute adverse employment actions.

### (iii)     Command Discipline

Like a negative evaluation, a "notice of discipline" is not an adverse employment action unless it "create[s] a materially adverse change in [the plaintiff's] working conditions."  *Weeks*, 273 F.3d at 86; *see also Krishnapillai v. Donahoe*, No. 09-CV-1022, 2013 WL 5423724, at *11 (E.D.N.Y. Sept. 26, 2013) ("[R]eprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions."); *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 228 (S.D.N.Y. 2010) (disciplinary notice was not an adverse employment action because the plaintiff "remained employed . . . in the same position and at the same rate of pay as she held before she was issued the notices"); *Perez v. N.Y. & Presbyterian Hosp.*, No. 05-CV-5749, 2009 WL 3634038, at *15 (S.D.N.Y. Nov. 3, 2009) (similar).  Relying on this principle, at least one court in this District has found that as a matter of law, CDs issued by the NYPD do not, without more, constitute adverse employment actions.  *See Barounis v. N.Y.C. Police Dep't*, No. 10-CV-2631, 2012 WL 6194190, at *12 (S.D.N.Y. Dec. 12, 2012).

Plaintiff provides no evidence that his CDs carried any tangible negative consequences. *See* Pl.'s Mem. of Law at 4–5, 11. Indeed, the penalty for many of Plaintiff's CDs was simply to receive a warning letter instructing him to review proper police procedures.[9] *See, e.g.*, Cosgrove Decl. Exs. E, F, H. Accordingly, the CDs do not constitute adverse employment actions.

### (iv)    Change in Work Assignment

"[T]he receipt of undesirable assignments must be accompanied by a material detriment to an employee's working conditions to constitute an adverse employment action." *Ward v. Shaddock*, No. 14-CV-7660, 2016 WL 4371752, at *5 (S.D.N.Y. Aug. 11, 2016) (quoting *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 404 (S.D.N.Y. 2014), and collecting other cases); *see also Katz v. Beth Israel Med. Ctr.*, No. 95-CV-7183, 2001 WL 11064, at *14 (S.D.N.Y. Jan. 4, 2001). A Plaintiff's subjective "dissatisfaction with the work assigned," absent some evidence that the assignment materially worsened Plaintiff's working conditions, "is insufficient to make out an adverse employment action." *Johnson v. Morrison & Foerster LLP*, No. 14-CV-428, 2015 WL 845723, at *5 (S.D.N.Y. Feb. 26, 2015).

Plaintiff points to no evidence that changes in his work assignment materially worsened his work conditions. *See* Pl.'s 56.1 Resp. ¶ 33; Pl.'s Mem. of Law at 3, 11. Plaintiff argues that his reassignment from training to mail duty was an adverse action because mail duty "is a function usually assigned to police cadets," a position lower in rank than that held by Plaintiff. *See* Pl.'s Mem. of Law at 3; Pl.'s 56.1 Resp. ¶ 33. Plaintiff, however, offers no detail as to how performing mail duty resulted in tangibly worse working conditions than conducting training;

---

[9]     Although Cosgrove recommended that Plaintiff lose vacation days for one of the CDs, that penalty was never imposed (at least, as of the date that Defendants' motion was filed). *See* Defs.' 56.1 Stmt. ¶¶ 52–53; Pl.'s 56.1 Resp. ¶¶ 52–53.

accordingly, Plaintiff's argument amounts to nothing more than subjective dissatisfaction with his work assignment. That is not sufficient to establish an adverse employment action.[10]

### (v) LODI

Plaintiff asserts that if his respiratory ailment had been classified as a LODI, then his numerous sick days "would not have counted against him" in his attendance record. Pl.'s 56.1 Resp. ¶ 68; *see also* Pl.'s Mem. of Law at 3, 11. From that, he seems to assert that the decision not to so classify his ailment constituted an adverse employment action.

The record is not entirely clear as to the criteria for or the consequences of LODI status. Accepting Plaintiff's assertions as true and viewing the evidence in the light most favorable to him, if his respiratory ailment had been classified as a LODI, he would have been entitled to take administrative leave for absences related to this condition, rather than needing to use sick leave. *See* Pl.'s Mem. of Law at 3, 11.

Numerous courts in this District have held that denial of administrative leave is not an adverse employment action, even when the denial causes the employee to use allotted sick days. *See, e.g.*, *Krishnapillai*, 2013 WL 5423724, at *10; *Porter v. Donahoe*, 962 F. Supp. 2d 491, 499 (E.D.N.Y. 2013) (holding that "the rejection of [plaintiff's] requests for leave on the terms he demanded[,] either administrative, or leave without pay . . . instead of sick leave and annual leave," did not constitute adverse employment actions); *Delaney v. LaHood*, No. 07-CV-471,

---

[10] Additionally, Defendants offer evidence that Cosgrove assigned Plaintiff to mail duty because Cosgrove had received complaints that cadets were not delivering mail properly and that an officer of Plaintiff's rank was needed to complete this task. *See* Defs.' 56.1 Stmt. ¶ 33 (citing Cosgrove Decl. ¶ 12). That undisputed fact suggests that the assignment was not a form of punishment or a career setback.

Plaintiff also argues that Defendants assigned him to watch security cameras, a task that Plaintiff argues was unduly difficult due to his sleep apnea. *See* Pl.'s 56.1 Stmt. ¶ 34; Pl.'s Mem. of Law at 11–12. This assignment, however, lasted for only a single day. *See* Defs.' 56.1 Stmt. ¶ 34 (citing Cosgrove Decl. ¶ 13); Pl.'s Dep. at 188–90. As a matter of law, a one-day assignment could not have materially altered the terms and conditions of Plaintiff's employment.

2009 WL 3199687, at *26 (E.D.N.Y. Sept. 30, 2009); *cf. Weber v. City of New York*, 973 F.

Supp. 2d 227, 252 (E.D.N.Y. 2013) (denial of time off is not an adverse employment action).[11]

Plaintiff offers no evidence that the denial of his request for his respiratory ailment to be classified as a LODI carried any tangible consequences, other than that it caused him to use sick days and, consequently, that he had a poor attendance record.[12]  As to the attendance record, Plaintiff offers no evidence that it had any effect on the terms and conditions of his employment. Accordingly, Defendants' failure to classify Plaintiff's respiratory ailment as a LODI does not constitute an adverse employment action.

### (vi)    Discretionary Promotions

Plaintiff asserts that his supervisors did not offer him a "discretionary promotion" or a "special assignment," which, he argues, could have resulted in him receiving higher pay.  *See* Pl.'s Mem. of Law at 3–4, 11; Pl.'s Dep. at 50–52, 181–82.  In order to show that a denial of a promotion is an adverse employment action, a plaintiff must "allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely assert[] that on several occasions she or he generally requested promotion."  *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998); *see also Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 442 (S.D.N.Y. 2014) (dismissing failure-to-promote claims because the plaintiffs failed to allege

---

[11]     Some of these courts have held that the denial of sick leave *altogether* (that is, the ability to take paid time off for illness) may be an adverse employment action; these courts, however, have held that the denial of *administrative* leave (that is, the ability to take paid time off without using sick days) is not an adverse employment action.  *See, e.g., Krishnapillai*, 2013 WL 5423724, at *10; *Porter*, 962 F. Supp. 2d at 499.  Here, there is no dispute that Plaintiff was allowed to take paid time off when he was ill; the only issue is whether he was entitled to be absent without using sick days.  *See* Pl.'s Mem. of Law at 3, 11; Pl.'s 56.1 Resp. ¶ 68.

[12]     Plaintiff argues that the denial of his request to classify his ailment as a LODI caused him to be classified as a "chronic sick" employee, which, in turn, "was a disadvantage in getting benefits such as overtime [and] discretionary promotion[s]."  Pl.'s Mem. of Law at 3–4; *see also id.* at 11.  Plaintiff offers no citations or details for these conclusory assertions; accordingly, the Court need not consider them.  *See Amnesty America*, 288 F.3d at 470–71; *Stein v. N. Assur. Co. of Am.*, No. 09-CV-1029, 2012 WL 1605365, at *1 (E.D.N.Y. May 7, 2012).  In any event, as the Court will explain, Plaintiff offers no evidence that he ever applied for overtime or for a promotion, or that any promotion opportunities even existed.  *See infra* Part II.A.2.vi–vii.

"that they were interested in a promotion or that there was an open position to which they could have (or would have) applied"); *Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004); *Augustine v. Cornell Univ.*, No. 14-CV-7807, 2018 WL 1474402, at *7 (S.D.N.Y. Mar. 26, 2018), *aff'd sub nom. Brown v. Cornell Univ.*, 758 F. App'x 226 (2d Cir. 2019).

Plaintiff has presented no evidence that he ever applied for a "discretionary promotion" or that such "promotions" even exist.  During his deposition and in his response to Defendants' motion, Plaintiff failed to identify a single person who ever received such a promotion during his time at the PMU.[13]  *See* Pl.'s Dep. at 52; Defs.' 56.1 Stmt. ¶¶ 14, 41; Pl.'s 56.1 Stmt. ¶¶ 14, 41. Nor has Plaintiff presented any evidence:  that there were any vacancies into which he could have received a "discretionary promotion" while he was working at the PMU; that he would have been eligible for such a promotion; or that anyone in his unit—regardless of race—ever received such a promotion.  *See* Pl.'s Dep. at 52; Defs.' 56.1 Stmt. ¶¶ 14, 41; Pl.'s 56.1 Stmt. ¶¶ 14, 41.  Because Plaintiff offers no evidence that there were positions into which he could have been promoted, Defendants' failure to promote him does not constitute an adverse employment action.

### (vii)    Overtime

Plaintiff also argues that Defendants discriminated against him by denying him overtime. *See* Pl.'s Mem. of Law at 4, 6–7.  This allegation does not appear in Plaintiff's Amended Complaint; Plaintiff raised it for the first time in his response to Defendants' motion for summary judgment.  *See* Am. Compl.; Pl.'s Mem. of Law at 4, 6–7.  Because "[a] party may not

---

[13]    Plaintiff identified one person in the PMU who received "special-assignment pay," but Plaintiff offered no other facts regarding this issue.  Plaintiff does not disclose why that person received such pay or whether Plaintiff was eligible to receive it.  *See* Pl.'s Dep. at 182; Defs.' 56.1 Stmt. ¶ 40; Pl.'s 56.1 Stmt. ¶ 40.  In addition, the person who allegedly received "special-assignment pay" is African American, *see* Pl.'s Dep. at 182, foreclosing the possibility that Plaintiff could rely on this person as a comparator in attempting to raise an inference of racial discrimination.

use his or her opposition to a dispositive motion as a means to amend the complaint," *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007), "it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment," *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) (collecting cases). Accordingly, the Court need not consider this argument.

Even if this argument had been properly pleaded, it would fail, as Plaintiff proffers no evidence that he was eligible for overtime or that he ever requested overtime. *See* Pl.'s Mem. of Law at 4. The only evidence that Plaintiff points to is his own deposition testimony, which is conclusory and devoid of any specifics. *See* Pl.'s Dep. at 254–56. Accordingly, Plaintiff has failed to offer sufficient evidence that he was ever denied overtime, let alone that the denial constituted an adverse employment action.

In short, Plaintiff has failed to establish that he suffered any adverse employment actions within the meaning of the anti-discrimination laws.

> ### b. Plaintiff Has Failed to Raise an Inference of Discriminatory Intent

Even if Plaintiff had presented evidence that he was subjected to an adverse employment action, summary judgment for Defendants would still be appropriate because Plaintiff has presented no evidence that raises an inference of discrimination, a required element of Plaintiff's prima facie case. "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [adverse employment action].'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

### (i) Plaintiff's Evidence of White Comparators

Plaintiff attempts to raise an inference of discrimination by arguing that white officers in his unit received higher performance ratings, did not receive CDs, and were not subjected to the other purported adverse employment actions discussed above. *See* Pl.'s Mem. of Law at 5–7, 12–14, 20; Pl.'s 56.1 Stmt. ¶ 43; Pl.'s Decl. ¶ 16. If a plaintiff relies on evidence that he was treated less favorably than employees outside of his protected group to raise an inference of discriminatory intent, he must establish that he was "similarly situated in all material respects" to those employees. *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)). "What constitutes 'all material respects' varies . . . from case to case, but the plaintiff and those he maintains were similarly situated must have been subject to the same workplace standards," allowing for "a reasonably close resemblance of facts and circumstances." *Baity v. Kralik*, 51 F. Supp. 3d 414, 445 (S.D.N.Y. 2014) (quoting *Graham*, 230 F.3d at 40); *see also Potash v. Florida Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 579–80 (S.D.N.Y. 2013). Although this question is generally one of fact for a jury, "[t]his rule is not absolute . . . and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790–91 (2d Cir. 2007) (internal quotation marks omitted).

Plaintiff offers no evidence—whatsoever—to suggest that the white employees to whom he refers were similarly situated to him in any material respect. Specifically, Plaintiff offers no evidence that the white employees to whom he points engaged in the same insubordinate and disruptive conduct that he did, that they had similar work performance, or that they were otherwise subject to similar "workplace conditions and evaluative standards." *Graham*, 230 F.3d at 40. Indeed, most of Plaintiff's references to white comparators do not even specify the

employees' names, making it impossible to tell whether the comparators had the same rank, position, job responsibilities, disciplinary record, or performance histories as Plaintiff. *See* Pl.'s Mem. of Law at 5–6, 20; Pl.'s Decl. ¶ 16. Having failed to offer even a scintilla of pertinent evidence, Plaintiff's references to white comparators are insufficient to raise an inference of discriminatory intent.

Plaintiff also argues that the discipline he received for making unauthorized changes to his tours of duty was unfair, as white employees routinely made changes to their tours in the same manner without being disciplined. *See* Pl.'s Mem. of Law at 12–13; Pl.'s 56.1 Stmt. ¶ 43; Pl.'s Decl. ¶ 16. In support of this argument, Plaintiff points to a shift schedule containing numerous handwritten changes to the shifts of white employees. *See* Pl.'s Mem. of Law at 12–13 (citing Nwokoro Decl. Ex. 3). Plaintiff argues that those employees were not disciplined for making those handwritten changes, while he was. *See id.* Plaintiff, however, offers no evidence regarding the circumstances under which those handwritten changes were made. *See id.* For example, there is no evidence regarding *who* made those handwritten changes: the white employees or a supervisor. *See* Nwokoro Decl. Ex. 3. Assuming that the employees made the changes, there is no evidence when they did so: prior to or after the approval of a supervisor had been obtained. Absent some evidence explaining the markings on the schedule, Plaintiff's argument fails to raise an inference of discrimination. *See Graham*, 230 F.3d at 40 (to raise an inference of discrimination, a plaintiff must "show that similarly situated employees who went undisciplined engaged in comparable conduct" (citing *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997))).[14]

---

[14] Plaintiff states in his declaration that "all the white Sergeants" in his unit "routinely" made handwritten changes to the schedule without prior supervisory approval. Pl.'s Decl. ¶ 16. Because Plaintiff offers no foundation for this conclusory assertion, the Court need not consider it. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set

### (ii)    Plaintiff's Evidence of Remarks and Comments

Plaintiff also attempts to raise an inference of discrimination based on remarks that Cosgrove and other supervisors made to him.  *See* Pl.'s Mem. of Law at 3, 13; Pl.'s 56.1 Resp. ¶ 58.  Plaintiff asserts that when Cosgrove first became a supervisor in the PMU, he stated that he "was not going to take it easy" on Plaintiff if Plaintiff refused to transfer to a different unit. Pl.'s Mem. of Law at 3 (citing Pl.'s Dep. at 113; Pl.'s Decl. ¶ 13).  This remark, however, bears no indicia of race-based animus.  Indeed, in his deposition, Plaintiff explained that the remark related to Plaintiff's prior CD for insubordination—not to Plaintiff's race or any other protected characteristic.  *See* Pl.'s Dep. at 113 ("[Cosgrove] was aware of . . . the pending disciplinary charges and he was not going to go easy on me with ensuing [*sic*] this penalties [*sic*] coming out of that. . . . He told me if I didn't transfer, he wasn't going to go easy on me.").  Given this context, the fact that the remark is facially race-neutral, and the fact that Plaintiff offers no further evidence of racial animus, no reasonable juror could interpret this remark as evincing an intent to discriminate.  *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149–50 (2d Cir. 2010); *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 116 (2d Cir. 2007).[15]

---

out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) ("[U]ltimate or conclusory facts and conclusions of law . . . cannot be utilized on a summary judgment motion."); *Wahad v. Fed. Bureau of Investigation*, 179 F.R.D. 429, 435 (S.D.N.Y. 1998) (same) (collecting cases).  Further, Plaintiff fails to identify any specific employee beyond "all the white Sergeants"—making it impossible to tell whether these employees were similarly situated to him in any respect.  Additionally, as the Court will explain, Plaintiff was repeatedly warned not to make changes to shift schedules without first obtaining the approval of a supervisor; the fact that Plaintiff continued to do so after being told not to makes his conduct distinguishable from the unspecified "white Sergeants" described in his declaration.  *See infra* Part II.A.3.

15    Plaintiff also asserts that when he confronted Cosgrove about his negative evaluations, Cosgrove mocked him, sarcastically telling him that he should receive a "challenge coin" for his contributions to the PMU.  Pl.'s Mem. of Law at 13 (citing Pl.'s Dep. at 180).  Additionally, Plaintiff asserts that one of his supervisors, David Wittmann, told Cosgrove that Plaintiff received a low rating because of his "lack of work ethic."  *Id.*  These remarks do not raise an inference of discrimination, as no reasonable juror could interpret them as indicative of race-based animus. In addition, Plaintiff refers to the remark about Plaintiff's "work ethic" in his memorandum of law with no record citations; accordingly, the Court need not consider it.  *See id.*; *Amnesty America*, 288 F.3d at 470–71; *Stein*, 2012 WL 1605365, at *1.  Furthermore, Plaintiff's evaluations stated that during the ratings period, he had failed to timely

Plaintiff also attempts to raise an inference of discrimination based on his appeal of his 2013 evaluation. *See* Pl.'s Mem. of Law at 5. In October 2014, Plaintiff successfully appealed this evaluation's rating of 4.0, raising it to 4.5. *See* Nwokoro Decl. Ex. 6. Plaintiff argues that in the course of changing Plaintiff's rating, the appeals officer found that the evaluation had been "based upon other than performance factors"; in Plaintiff's view, this raises "a strong inference" that the lower-than-warranted evaluation had been based on race. *Id.*; *see also* Pl.'s Mem. of Law at 5–6. Putting aside the fact that Plaintiff's argument constitutes a giant logical leap, it badly mischaracterizes the record. During the appeal, Plaintiff—not the appeals officer— asserted that the evaluation had been "based upon other than performance factors." Nwokoro Decl. Ex. 6. The appeals officer neither made nor adopted that position; he merely asked Plaintiff to "articulate just what those other factors might be in an effort to resolve this appeal." *Id.* Plaintiff subsequently told the officer that Plaintiff had helped the PMU "become more efficient" and that numerous other sergeants in the unit had received higher ratings than he had. *Id.* Based on those representations, the appeals officer increased Plaintiff's evaluation from 4.0 to 4.5. *Id.* Plaintiff offers no indication that he told the appeals officer that his evaluation had been based on race, nor is there any indication that the appeals officer so concluded. *See id.* Accordingly, this evidence does not raise an inference of discrimination.[16]

Plaintiff offers no other evidence to raise an inference of racial discrimination. Accordingly, Plaintiff has failed to establish a prima facie case.

---

update personnel files, making it reasonable for Wittmann to comment on his work ethic. *See* Carter Decl. Ex. D at 41–45.

[16] Even if the appeals officer had concluded that Plaintiff's 2013 evaluation had been based on his race, that evidence would have limited probative value, as the 2013 evaluation predated Cosgrove's arrival in the PMU by two years.

### 3. Defendants Have Offered Non-Discriminatory Explanations for Some of Their Actions, and Plaintiff Has Not Shown that the Explanations Are Pretextual

Because Plaintiff has failed to establish a prima facie case, the Court need not consider the non-discriminatory explanations that Defendants have provided for their actions. Nevertheless, Defendants have proffered such explanations. "[O]nce the employer articulates a non-discriminatory reason for its actions," the presumption created by the prima facie case "drops out of the picture." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000) (citations and internal quotation marks omitted). "[T]he burden [then] shifts back to the plaintiff to prove that the employer's reason was in fact pretext for discrimination," *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015), that is, to "demonstrate that the proffered reason was not the true reason for the employment decision," *Littlejohn*, 795 F.3d at 307. That burden "merges with the plaintiff's ultimate burden of showing that the defendant intentionally discriminated against [him]." *Id.* at 307–08. The question then becomes "whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." *James*, 233 F.3d at 156.

As to Plaintiff's transfer out of the PMU, his poor evaluations, and his numerous CDs, Defendants have offered legitimate, non-discriminatory reasons for their conduct. Defendants argue that Plaintiff's severe disciplinary problems, including his unauthorized tour changes, attendance issues, and disruptive behavior, made these actions appropriate. *See* Defs.' Mem. of Law at 18, 20–21. This explanation is consistent with the contemporaneous documentation relating to those actions. *See* Carter Decl. Ex. D at 37–46; Cosgrove Decl. Exs. A, G, H, I, J.

Plaintiff has provided no evidence to suggest that those reasons are pretextual, other than to argue that his changes to his tours of duty were consistent with NYPD procedures. *See* Pl.'s

Mem. of Law at 13, 22; Pl.'s 56.1 Resp. ¶ 45. As an initial matter, this argument relates to only one of the three explanations for Plaintiff's evaluations, CD, and transfers; as to the other two explanations—Plaintiff's poor attendance and disruptive conduct—Plaintiff does not even argue that the explanations are pretextual. As to the changes to his tour of duty, Plaintiff testified that, for years, officers were allowed to make handwritten changes to their schedules without first obtaining supervisory approval. *See* Pl.'s Dep. at 120–29. Regardless of whether that testimony was accurate, Plaintiff was warned repeatedly not to change his tour of duty without prior approval. *See* Defs.' 56.1 Stmt. ¶ 46 (Wittmann warned Plaintiff not to change his tour of duty without prior approval of a supervisor); *id.* ¶¶ 49–50 (an NYPD disciplinary office issued a memorandum to Plaintiff describing proper tour-change procedures); *id.* ¶ 54 (Plaintiff received a formal letter instructing him to review the applicable sections of the NYPD's Patrol Guide); Cosgrove Decl. Ex. A at 3 (command discipline for an unauthorized tour change noting that Plaintiff had received written instructions on tour-change procedures). Plaintiff does not explain why it was permissible for him to make unauthorized changes to his tour of duty after being instructed repeatedly not to do so. Indeed, in most instances, Plaintiff complied with NYPD procedures and properly requested authorization *before* making handwritten changes to his schedule; in only a few instances did Plaintiff deviate from those procedures, causing him to be disciplined. *See* Cosgrove Decl. Ex. A at 3 (command discipline stating that "[Plaintiff] is aware that the practice in this Section has been to obtain authorization from a supervisor prior to . . . submission [of a tour change]. [Plaintiff] demonstrated such awareness one week earlier when he requested authorization from the Executive Office prior to submitting Tour Changes."). Plaintiff's failure to follow repeated instructions relating to changes to his tour of duty was a

legitimate, non-discriminatory reason for Defendants' actions, and Plaintiff offers no evidence from which a reasonable factfinder could conclude that this reason is pretextual.[17]

Because Plaintiff did not establish a prima facie case and, even if he had, Defendants presented unrebutted, non-discriminatory reasons for their actions, Defendants' motion for summary judgment must be granted as to Plaintiff's claims for racial discrimination under Title VII and the NYSHRL.

### B.    Plaintiff's NYCHRL Claim

Although "courts must analyze NYCHRL claims separately and independently from any federal and state law claims," a plaintiff bringing a claim under the NYCHRL must still "show[] that the conduct [complained of] is caused by a discriminatory motive." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109–10 (2d Cir. 2013). The standard for causation under the NYCHRL "closely mirrors" that of Title VII and the NYSHRL: under all three statutes, the plaintiff must show that discrimination played a role in the employer's decision-making. *See Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 75–76 (2d Cir. 2015); *Philip v. Gtech Corp.*, No. 14-CV-9261, 2016 WL 3959729, at *10 (S.D.N.Y. July 20, 2016) (holding that the federal, state, and city "statutory standards as to causation are coterminous"); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 837 n.8 (S.D.N.Y. 2013) (similar).

As the Court has discussed, Plaintiff has offered no evidence that raises a reasonable inference that any of Defendants' actions were motivated by an intent to discriminate on the

---

[17]    Plaintiff cites to a series of emails in support of his assertion that his tour changes complied with NYPD procedures. *See* Pl.'s Mem. of Law at 13 (citing Nwokoro Decl. Ex. 2). Far from raising a dispute of fact, however, these emails include instructions from Plaintiff's supervisors to obtain authorization for tour changes in writing at least five days *in advance* of the applicable change. Nwokoro Decl. Ex. 2 at 2.

basis of race.  *See supra* Parts II.A.2.b, II.A.3.  Thus, for the reasons discussed above, Defendants' motion for summary judgment is granted as to Plaintiff's claims for race-based discrimination under the NYCHRL.

### III.     Defendants' Motion for Summary Judgment Is Granted in Part and Denied in Part as to Plaintiff's Claims for Disability-Based Discrimination

#### A.        The Motion Is Granted as to Plaintiff's ADA and NYSHRL Claims

Claims for disability-based discrimination brought pursuant to the ADA and the NYSHRL are subject to the same *McDonnell Douglas* burden-shifting framework as claims for race-based discrimination.  *See Sista*, 445 F.3d at 169.  To establish a prima facie case under the ADA, a plaintiff must show that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability."  *Id.* (quoting *Giordano v. City of New York,* 274 F.3d 740, 747 (2d Cir. 2001)).  The definition of an "adverse employment action" in the context of disability-based discrimination is the same as in the context of race-based discrimination.  *See Sosa v. N.Y.C. Dep't of Educ.*, 2019 WL 1323980, at *2 n.3 (E.D.N.Y. 2019) (collecting cases); *see also Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015); *Galabya*, 202 F.3d at 640.

Defendants do not dispute the first three elements of Plaintiff's prima facie case.  *See* Defs.' Mem. of Law at 14.  As to the fourth element, Plaintiff alleges no adverse actions in support of his disability-based claims other than those asserted in support of his racial-discrimination claims.  *See* Pl.'s Mem. of Law at 15–16.  As the Court has explained, as a matter of law, none of those actions constitutes an adverse employment action.  *See supra* Part II.A.2.a.

Accordingly, Plaintiff has not established a prima facie case of disability-based discrimination under the ADA or the NYSHRL.

Even if Plaintiff had offered evidence of adverse employment actions, Plaintiff has failed to present evidence that raises an inference of discriminatory intent as to almost all of the actions about which he complains. Plaintiff relies on the same bare-bones, conclusory allegations of supposedly "similarly situated" comparators and supposedly "derogatory" remarks for his disability-based claims as he does for his race-based claims. *See* Pl.'s Mem. of Law at 15–16. For the reasons the Court has discussed previously, these allegations fail to raise an inference of discriminatory intent. *See supra* Part II.A.3.[18]

As to one of Defendants' actions, however, Plaintiff has presented sufficient evidence for a reasonable juror to find that it was based, at least in part, on his disability. Plaintiff's 2015 and 2016 evaluations pointed to his poor attendance as one reason for his low ratings. *See* Cosgrove Decl. Ex. D at 37–46. "Where [an] employer was aware that an employee's absences were related to a disability . . . the employee's attendance record may be an impermissible pretext for the employee's disability." *Morris v. City of New York*, 153 F. Supp. 2d 494, 502–03 (S.D.N.Y. 2001) ("[D]efendant's overt reference to 'sick leave abuse' as a reason for the [adverse employment action], coupled with defendants' knowledge that plaintiff's absences were closely related to his disability, could reasonably provide a basis for an inference of discrimination.");

---

[18] There is no evidence, for example, that Plaintiff's applications to have his respiratory ailment classified as a LODI were denied because of animus toward Plaintiff's disability, as opposed to a rational determination that Plaintiff's condition did not qualify as a LODI. There is no indication that the individuals involved in deciding whether his ailment qualified as a LODI harbored any such animus. *See* Defs.' 56.1 Stmt. ¶¶ 69–73; Carter Decl. Exs. G, I; Cosgrove Decl. Ex. G; Nwokoro Decl. Ex. 8. Although Plaintiff asserts that Cosgrove was responsible for the LODI denials, his evidence on this point is his speculative and conclusory deposition testimony, which is devoid of any foundation. *See* Pl.'s 56.1 Resp. ¶¶ 69, 71; Pl.'s Mem. of Law at 15, 23. And although Plaintiff asserts that a surgeon in the NYPD's Medical Division made a disparaging remark about Plaintiff's disability, *see* Pl.'s Dep. at 227, Plaintiff's application for his ailment to be treated as a LODI was denied nearly a year later. *See* Nwokoro Decl. Ex. 8. There is no evidence that the complained-of surgeon was involved in that denial.

*see also, e.g.*, *Vives v. New York City Dep't of Corr.*, No. 15-CV-06127, 2019 WL 1386738, at *11 (E.D.N.Y. Mar. 27, 2019) (collecting cases). Plaintiff has offered some (extremely limited) evidence that Cosgrove had some involvement in these evaluations and that Cosgrove was aware of Plaintiff's alleged disability at that time. *See* Pl.'s 56.1 Resp. ¶ 28 (citing Pl.'s Dep. at 137); Pl.'s Decl. ¶¶ 11–14. Accordingly, although the evidence is thin, a reasonable juror could find that Plaintiff's negative evaluation ratings were motivated, at least in part, by his disability.[19]

Notwithstanding the limited evidence of discriminatory intent relating to his poor evaluations, Plaintiff's ADA and NYSHRL claims for disability-based discrimination fail because poor evaluations are not "adverse employment actions" within the meaning of those two statutes. *See supra* Part II.A.2.a.ii; *Davis*, 804 F.3d at 235; *Galabya*, 202 F.3d at 640; *Sosa*, 2019 WL 1323980, at *2 n.3. Accordingly, summary judgment is granted as to these claims.

**B.     The Motion Is Denied as to a Portion of Plaintiff's NYCHRL Claim, but the Court Will Decline to Exercise Supplemental Jurisdiction Over It**

Unlike its federal and state counterparts, "the NYCHRL does not require that an employment action taken against a plaintiff be 'materially adverse' in order for the plaintiff to establish a *prima facie* case of discrimination." *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015) (collecting cases); *see also Mihalik*, 715 F.3d at 114. Rather, under the NYCHRL, a plaintiff must simply show that [he] was treated "less well" at least in part because of his membership in a protected class. *See Ya-Chen*, 805 F.3d at 82; *Mihalik*, 715 F.3d at 110. As discussed, however, a plaintiff must still offer evidence that the complained-of conduct was

---

[19]     Of course, Defendants have offered overwhelming evidence that Plaintiff's evaluations were based on non-discriminatory factors. Nevertheless, the anti-discrimination laws require only that disability play a *part* of an employer's motivation for an action. *See, e.g.*, *Ya-Chen*, 805 F.3d at 76; *Mihalik*, 715 F.3d at 110. Because the evaluations mention attendance in addition to discipline, a reasonable juror could find that the ratings were motivated, in part, by Plaintiff's disability.

"caused by a discriminatory motive." *Ya-Chen*, 805 F.3d at 76; *see also Mihalik*, 715 F.3d at 110.

Plaintiff has offered no evidence of disability-based discrimination with respect to any of Defendants' actions, other than the evaluations.[20] *See supra* Part III.A. Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's NYCHRL claim except to the limited extent that the claim is based on the evaluations; as to that limited part of Plaintiff's NYCHRL claim, summary judgment is denied.

The Court declines to exercise supplemental jurisdiction over the part of this claim that survives. A district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "Courts in this District routinely decline to exercise supplemental jurisdiction over a plaintiff's NYCHRL claims after dismissing all federal claims." *Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 428 (S.D.N.Y. 2018) (collecting cases). For the reasons explained *supra* and *infra*, Defendants' motion for summary judgment is granted on all state and federal claims in this case (and, indeed, on all city-law claims, too, except for the claim discussed in this section). The parties conducted very little discovery in this case, having deposed only two witnesses and exchanged a limited number of documents; starting this action anew in state court, therefore, would not be unduly burdensome. Additionally, "comity counsels against exercising jurisdiction over [a plaintiff's] NYCHRL claim[s], as the NYCHRL has a lower threshold of proof than its federal counterparts and has been applied primarily at the intermediate appellate level of the state

---

[20] Plaintiff's CDs and the letter requesting Plaintiff's transfer, for example, do not mention Plaintiff's attendance issues, *see* Cosgrove Decl. Exs. A, J, and Plaintiff has offered no evidence that these actions were motivated by disability-based discrimination.

courts, with limited opportunity for the New York Court of Appeals to construe it." *Id.* at 428–29.

For all these reasons, the Court declines to exercise supplemental jurisdiction over the limited part of Plaintiff's NYCHRL claim for disability-based discrimination that has survived summary judgment. That claim is DISMISSED WITHOUT PREJUDICE.[21]

## IV. Defendants' Motion for Summary Judgment Is Granted as to Plaintiff's Claims for Race-Based Retaliation

### A. The Applicable Law

Retaliation claims under Title VII, the NYSHRL, and the NYCHRL are evaluated under the *McDonnell Douglas* burden-shifting standard. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citing *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)); *see also DeLuca v. Sirius XM Radio, Inc.*, No. 12-CV-8239, 2017 WL 3671038, at *23 (S.D.N.Y. Aug. 7, 2017). A plaintiff establishes a prima facie case of retaliation by showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks*, 593 F.3d at 164.

As to the fourth prong of the prima facie case, "proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks*, 593 F.3d at 170 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). The elements of a prima facie case

---

[21] "[W]hen a court dismisses for lack of subject-matter jurisdiction, that dismissal must be without prejudice." *Siegel v. Apergis*, 610 F. App'x 15, 16 (2d Cir. 2015) (collecting cases).

of retaliation under Title VII, the NYSHRL, and the NYCHRL are "identical," except that the NYCHRL employs a broader standard of an "adverse employment action" than its federal and state counterparts. *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 70 (S.D.N.Y. 2016); *see also, e.g.*, *Ya-Chen*, 805 F.3d at 76 (quoting *Mihalik*, 715 F.3d at 113); *Leon v. Columbia Univ. Med. Ctr.*, No. 11-CV-8559, 2013 WL 6669415, at *12 (S.D.N.Y. Dec. 17, 2013); *Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 580 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013).

## B.     Application to This Case

It is undisputed that Plaintiff engaged in protected activity when he filed a discrimination complaint with the NYPD's EEO on March 14, 2016, and when he filed a charge of discrimination with the U.S. EEOC on May 10, 2016. *See* Pl.'s Mem. of Law at 17; Defs.' Mem. of Law at 15; Carter Decl. Exs. L, N. Plaintiff asserts that Defendants retaliated against him by: declining to classify his respiratory ailment as a LODI, accusing him of threatening a fellow officer, issuing CDs against him, and transferring him to the 42nd Precinct and to other NYPD units. *See* Pl.'s Mem. of Law at 17–19. Each of these arguments fails.

The decision not to classify Plaintiff's respiratory ailment as a LODI occurred in late March 2016, which is sufficiently close in time to Plaintiff's EEO complaint as to raise an inference of a retaliatory motive. *See* Pl.'s Mem. of Law at 17; Carter Decl. Ex. I; *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 932 (2d Cir. 2010) (per curiam). Defendants, however, have demonstrated that the officers involved in the LODI decision-making process (Sergeant Jason Goitia, Lieutenant Charles Licciardi, and Lieutenant James Alexander), *see* Defs.' 56.1 Stmt. ¶¶ 69–73, Carter Decl. Exs. G, I; Cosgrove Decl. Ex. G, had no knowledge of the EEO complaint: EEO complaints are kept confidential while they are being investigated; accordingly,

even Cosgrove, Plaintiff's commanding officer, had no knowledge of the EEO complaint during this time. *See* Defs.' 56.1 Stmt. ¶¶ 86, 90; Cosgrove Decl. ¶ 20; Carter Decl. Ex. M (letter marked "confidential" reporting on the investigation of Plaintiff's complaint). "[E]vidence that the specific decision-makers responsible for the adverse action were not aware of a plaintiff's protected activity is . . . relevant 'as some evidence of a lack of a causal connection, countering plaintiff's circumstantial evidence of proximity or disparate treatment.'" *Barney v. Consol. Edison Co. of N.Y*, No. 99-CV-823, 2009 WL 6551494, at *13 (E.D.N.Y. Oct. 1, 2009) (quoting *Gordon*, 232 F.3d at 117), *aff'd*, 391 F. App'x 993 (2d Cir. 2010); *see also Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 362 n.5 (S.D.N.Y. 2012). Plaintiff presented no evidence that any of these decision-makers knew about his EEO complaint, nor has Plaintiff presented any evidence of a causal connection beyond temporal proximity. Accordingly, Plaintiff's argument fails.[22]

Plaintiff also asserts that Defendants retaliated against him when they accused him of threatening and harassing a fellow officer in April 2016. *See* Pl.'s Mem. of Law at 18. Assuming, without deciding, that such an accusation could constitute retaliation, Defendants have offered legitimate, non-retaliatory reasons for the action. As the Court has discussed, it is undisputed that Plaintiff shouted at and threatened to suspend an officer in front of her co-workers, bringing her to tears on two different occasions. *See* Cosgrove Decl. Ex. H. Plaintiff's behavior "disrupted command operations." Carter Decl. Ex. D at 43. Accordingly, Defendants

---

[22] Plaintiff has offered some limited evidence that Cosgrove learned of the EEO complaint in June 2016. *See* Pl.'s Mem. of Law at 17–18 (citing Nwokoro Decl. Ex. 11). Plaintiff offers no evidence, however, that Cosgrove (or any other relevant person) knew about the EEO complaint when the LODI application was denied, in March 2016.

had legitimate reasons for accusing Plaintiff of this conduct, and this part of Plaintiff's claim fails.[23]

Finally, Plaintiff asserts that Defendants retaliated by issuing CDs against him in August 2016, transferring him to the 42nd Precinct in September 2016, and transferring him to other NYPD positions in October and December 2017. *See* Pl.'s Mem. of Law at 17–19. These actions are not sufficiently temporally proximal to raise an inference of a causal connection. *See Lambert*, 304 F. Supp. 3d at 423 (the passage of approximately two months is the "outer limit[] beyond which a temporal relationship is too attenuated"). Additionally, as to the CDs and the transfer to the 42nd Precinct, Defendants have offered legitimate, non-retaliatory reasons for their conduct—namely, Plaintiff's significant disciplinary history—and Plaintiff has proffered no evidence that tends to show that those reasons were pretextual. *See supra* Part II.A.3. As to the October and December 2017 transfers, Plaintiff has offered no evidence of who effectuated these transfers, let alone that they were effectuated with a retaliatory motive. Accordingly, each of these arguments fails.

Because no reasonable juror could find that Defendants retaliated against Plaintiff, Defendants' motion for summary judgment is granted as to those claims.[24]

---

[23] In an attempt to argue pretext, Plaintiff maintains that he was warranted in threatening to suspend the officer because she had refused to follow Plaintiff's orders. *See* Pl.'s 56.1 Resp. ¶ 55; Pl.'s Decl. ¶¶ 17–18. Regardless of whether that is true, Plaintiff offers no evidence to dispute the most serious part of this incident: that he dealt with her alleged insubordination not in private but in front of her co-workers. *See* Cosgrove Decl. Ex. H.

[24] Plaintiff also asserts that he engaged in a protected activity when he filed the Complaint in this case in February 2017. *See* Pl.'s Mem. of Law at 17. Plaintiff raised this argument for the first time in his response to Defendants' motion for summary judgment; Plaintiff did not include this allegation in his Amended Complaint. *See* Am. Compl. Accordingly, the Court need not consider this allegation. *See Penney v. AIG Domestic Claims, Inc.*, No. 04-CV-9071, 2007 WL 541711, at *9 (S.D.N.Y. Feb. 20, 2007) (collecting cases); *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99-CV-10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion.").

Even if this allegation were properly pleaded, it would fail. The only allegedly retaliatory actions that took place after the Complaint was filed were Plaintiff's September and December 2017 transfers. *See* Pl.'s Mem. of

**V.     Defendants' Motion for Summary Judgment Is Granted as to Plaintiff's Failure-to-Accommodate Claim**

As to Plaintiff's claim that Defendants failed to accommodate his disability, Defendants have moved for summary judgment on the ground that Plaintiff failed to include this allegation in the charge of discrimination that he filed with the U.S. EEOC and, therefore, that he failed to exhaust his administrative remedies for this claim. *See* Defs.' Mem. of Law at 5–6.

"Ordinarily, a plaintiff seeking to bring a claim pursuant to the [ADA] . . . must exhaust administrative remedies" by filing a charge of discrimination with the EEOC. *Soules v. Connecticut Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018). "In this [C]ircuit, however, 'claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency.'" *Id.* (quoting *Shah v. N.Y. State Dep't of Civil Servs.*, 168 F.3d 610, 614 (2d Cir. 1999)). "Subsequent conduct is 'reasonably related' to conduct in an EEOC charge if:  (1) the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; (2) it alleges retaliation for filing the EEOC charge; or (3) the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.* (quoting *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002)); *see also, e.g.*, *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006); *Zagaja v. Vill. of Freeport*, No. 10-CV-3660, 2015 WL 3507353, at *13–15 (E.D.N.Y. June 3, 2015).

Plaintiff's failure-to-accommodate claim arises out of his assignment to the position of "desk officer" at the 42nd Precinct in late 2016. *See* Am. Compl. ¶¶ 38–47, 77–82.  Plaintiff

---

Law at 19.  Those actions are not sufficiently temporally proximal to the filing of the Complaint to raise an inference of a retaliatory motive, *see Lambert*, 304 F. Supp. 3d at 423, and Plaintiff offers no further evidence of a causal connection.

alleges that this position required "a high degree of concentration and attention to detail," *id.* ¶ 38, and was located in an "open and dusty area," *id.* ¶ 43, making it difficult for him to do the job due to his respiratory ailments and sleep apnea, *id.* ¶¶ 39, 44. Plaintiff alleges that he requested reassignment to a different position but that his request was ignored. *Id.* ¶¶ 40, 42, 45, 47.

This claim is not reasonably related to Plaintiff's EEOC charge. The majority of his charge alleged discrimination on the basis of race, not disability. *See* Cosgrove Decl. Ex. N. Some limited parts of the charge alleged disability-based discrimination, but the charge did not allege a failure to accommodate. *See id.* Rather, the charge alleged: that Cosgrove had "attempted to humiliate" Plaintiff by assigning him to monitor security cameras, a task that Plaintiff alleges was unduly difficult due to his sleep apnea; that Defendants had unfairly failed to provide him tour changes to attend doctor's appointments; that they had denied his LODI applications; and that they had denied him disability benefits. *See id.* at 4–7.

Plaintiff's failure-to-accommodate claim, associated with his assignment as the 42nd Precinct desk officer, is not reasonably related to the camera-assignment allegation in the EEOC charge. Plaintiff does not allege that he requested a different assignment from watching cameras or that Cosgrove failed to accommodate that request; Plaintiff simply alleges that the camera-watching assignment was difficult due to his disability. The scope of investigation of that charge would not reasonably include an entirely separate assignment, nor does the charge allege retaliation or discrimination in "precisely the same manner" as that alleged in the failure-to-accommodate claim. *See Soules*, 882 F.3d at 57. Accordingly, Plaintiff's failure-to-accommodate claim is not reasonably related to the allegation in the EEOC charge.[25]

---

[25]     *See Spillers v. N.Y.C. Health & Hosps. Corp.*, 763 F. App'x 138, 139 (2d Cir. 2019) (affirming dismissal of failure-to-accommodate claim because "[i]n his EEOC complaint, [the plaintiff] alleged discrimination on the basis

The balance of the allegations in the EEOC charge could, conceivably, be construed as failures to accommodate Plaintiff's disability. Those allegations do not, however, allege a failure to accommodate similar to Plaintiff's request to be reassigned from being the 42nd Precinct's Desk Officer. Moreover, the EEOC allegations relate to events in March and April 2016, months before Plaintiff's September 2016 assignment as Desk Officer at the 42nd Precinct. Accordingly, the scope of the investigation of those charges would not reasonably have included Plaintiff's failure-to-accommodate claim, nor does the claim allege retaliation or discrimination in precisely the same manner as that alleged in the EEOC charge.[26] *See Soules*, 882 F.3d at 57.

No other allegations in Plaintiff's EEOC charge even remotely approach the allegations in his failure-to-accommodate claim. Accordingly, Plaintiff failed to exhaust his administrative remedies, and Defendants' motion for summary judgment is granted as to this claim.[27]

## CONCLUSION

For all the foregoing reasons, Defendants' motion for summary judgment (Dkt. 53) is GRANTED as to all of Plaintiff's claims except for the part of Plaintiff's NYCHRL claim for

---

of his disability, but did not include a failure to accommodate claim or indicate that he sought any accommodation for his disability"); *Hoffman v. Williamsville Cent. Sch. Dist.*, No. 09-CV-1065, 2010 WL 3787961, at *7 (W.D.N.Y. Sept. 23, 2010) (dismissing failure-to-accommodate claim on exhaustion grounds; although the plaintiff's administrative charge stated that the defendant's conduct "greatly exacerbated" her disability, "[t]here are no factual allegations regarding either her request for reasonable accommodation . . . or the [defendant's] refusal to accommodate that request"), *aff'd*, 443 F. App'x 647 (2d Cir. 2011).

[26]      *See Chandler v. AMR Am. Eagle Airline*, 251 F. Supp. 2d 1173, 1178–79 (E.D.N.Y. 2003) (dismissing claim that defendants failed to accommodate the plaintiff's "prostate condition" because the plaintiff's EEOC charge alleged only "a failure to accommodate [his] back and leg injuries"; the two claims were not reasonably related because "the accommodations required for plaintiff's prostate condition . . . differ significantly in kind and scope from those asserted in relation to plaintiff's back and leg injuries"); *see also Bresloff-Hernandez v. Horn*, No. 05-CV-0384, 2007 WL 2789500, at *8 (S.D.N.Y. Sept. 25, 2007) (dismissing claim for failure to accommodate the plaintiff by offering her a "shift change" because the claim was not reasonably related to the EEOC charge, which alleged failure to accommodate by offering a "different position" altogether).

[27]      Although the NYSHRL and NYCHRL do not contain the same exhaustion requirements as the ADA, *see Bresloff-Hernandez*, 2007 WL 2789500, at *8 n.5, Plaintiff brought his failure-to-accommodate claim only under the ADA. *See* Am. Compl. ¶¶ 77–82.

disability-based discrimination that arises out of his negative evaluations.  That claim is

DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction.

The Clerk of Court is respectfully directed to terminate all open motions and to CLOSE

the case.

**SO ORDERED.**

**Date:  June 13, 2019**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**